[Crim. No. 17560. Second Dist., Div. Five. June 15, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS AMADOR, Defendant and Appellant.

## COUNSEL

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Alan V. Hager, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KAUS, P. J.—Found guilty of second degree burglary by the court sitting without a jury, defendant was sentenced to state prison and appeals.

. The residence of Mr. and Mrs. Koyama was burglarized some time between 11:40 a.m. on January 9, 1969, and 2 a.m. the next day. The front door was left open. A television set and a piggy bank had been taken. A window had apparently been forced as a means of entry. The piggy bank had been next to a Japanese doll case on top of the television set. A latent palm print identified as defendant's was found on the Japanese doll case on January 10. Defendant testified in his own behalf: On January 9, he was in the vicinity of 326 Neptune Avenue, the address of the victims, looking for a girl friend who he had been told, lived somewhere in the 300 block. The door to 326 Neptune was open. He walked up to it and called out his girl friend's name. When he received no answer he entered the house. He thought it was the home of a person named Ernie.[1] Taking anything from inside the house was the last thing he had in mind. Inside the house he picked up a box-like object which had been on the floor and sat it down again. After two or three minutes he left, not taking anything with him. The house was in a state of disarray. He could not recall seeing a television set or a piggy bank. The time was about 3 p.m. He had been drinking. After he left the house he made no further attempt to see the girl

---

[1]Defendant's testimony suggested that he thought that Ernie would be able to give him a better fix on the girl friend's address.

friend, nor did he go to Ernie's house, although he actually knew where Ernie lived. He felt "kind of funny" after having entered the Koyama home. He went to a park across the street where he went to sleep.

## DISCUSSION

■ On appeal defendant contends merely that the evidence was insufficient to support the finding that he had been the burglar. He relies chiefly on *People* v. *Briggs,* 255 Cal.App.2d 497 [63 Cal.Rptr. 111], *People* v. *Draper,* 69 Cal.App.2d 781 [160 P.2d 80]; and *People* v. *Flores,* 58 Cal.App.2d 764 [137 P.2d 767]. Each one of those cases is distinguishable on its facts. In *Briggs,* instead of having found fingerprints inside of the burglarized premises, the only evidence connecting defendant to the crime was his wallet found on the outside.[2] Similarly in *Draper* the prosecution was unable to prove that defendant had ever been at the scene of the crime. In *Flores* the defendant's fingerprints had been found on the rear view mirror of a stolen automobile. Much evidence had been offered by the defense indicating that the car in question had been stolen by others before the defendant became a passenger therein. We could perhaps suggest that *Flores* is a case somewhat out of line with the principle that "[a] judgment will not be reversed unless upon no reasonable hypothesis whatsoever is there sufficient evidence to support the trier of fact's conclusion, and an appellate court will assume the existence of every fact in support of the judgment that can reasonably be deduced from the evidence. . . ." (*People* v. *Baird,* 70 Cal.2d 3, 4-5 [73 Cal.Rptr. 547, 447 P.2d 939].) In any event, it is an adequate distinction that there the print was found on the stolen object, rather than left behind at the place where the crime was committed.[3]

The Attorney General claims that in *People* v. *Ang,* 205 Cal.App.2d 553 [22 Cal.Rptr. 455] the evidence was no stronger than in the present case. This is perhaps not quite true, because in *Ang* the prosecution negatived the possibility that defendant's fingerprint was left at a time other than during the burglary.

It is also asserted that the case at bar is governed by *People* v. *Atwood,* 223 Cal.App.2d 316 [35 Cal.Rptr. 831], where the defendant's palm print was found in a burglarized garage. After his arrest Atwood denied

---

[2]The last paragraph of the opinion strongly suggests that the court would have reached a different result had fingerprint evidence been offered.

[3]The Attorney General suggests that perhaps *People* v. *Redmond,* 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321] is closest to defendant's case. There, however, both the People's and the defense's evidence agreed that the defendant had been on the premises on a perfectly legitimate mission the day before the burglary.

ever having been in the premises and remained silent when informed that his palm print had been identified. At the trial he testified to two innocent visits to the garage during the week preceding the burglary, hoping that, if believed, they would explain the palm print. He denied the substance of the police testimony concerning his extrajudicial denial and his silence. The evidence was found to be sufficient. The court's discussion touches upon possible situations where fingerprints evidence at the scene of the crime alone might be sufficient to convict, but actually does not rely on the prints left by Atwood because of their location away from any point of forced entry. What did convince the court that the evidence was adequate was the defendant's false statement made to the police before trial, which indicated a consciousness of guilt.

Analytically there may be a difference between false statements to the police during the investigatory stage of a prosecution and false testimony from the stand. It has, however, been recognized authoritatively that under proper circumstances each type of falsehood may be considered as part of the prosecution's total case. Thus, for example, in *People* v. *Foster*, 115 Cal.App.2d 866 [253 P.2d 50], it is clear that had the defendant Foster not attempted to manufacture a clumsy defense from the stand, his conviction would have been reversed for insufficiency of evidence. A few months later, in *People* v. *Wayne*, 41 Cal.2d 814 [264 P.2d 547], the question was whether a "fantastic" explanation for incriminating facts given by the defendant both before and during the trial was adequate corroboration to satisfy the requirement of section 1111 of the Penal Code. The court said: "The People rely upon *Boston* v. *Santosuosso* (1940) 307 Mass. 302, 349 [30 N.E.2d 278], and *Sheehan* v. *Goriansky* (1944) 317 Mass. 10, 16 [56 N.E.2d 883]. We agree with the following reasoning of the *Santosuosso* case: 'Of course, as has been pointed out many times, disbelief of evidence is not the equivalent of affirmative evidence to the contrary. [For example, in *Zarrillo* v. *Stone* (1945) 317 Mass. 510, 512 [58 N.E.2d 848], an action for personal injuries, Justice Wilkins, who also wrote the *Sheehan* opinion, pointed out that disbelief of defendant's testimony to the effect that he was not negligent could not supply proof that he was negligent.] But where a material fact is established by evidence and it is shown that a defendant's testimony as to that fact was willfully untrue, this circumstance not only furnishes a ground for disbelieving other testimony of this defendant [citations], but also tends to show consciousness of guilt or liability on his part and has probative force in connection with other evidence on the issue of such guilt or liability. Such false testimony is in the nature of an admission from which with other evidence guilt or liability may be inferred. [Citations.]'

"It should be emphasized that no inference of consciousness of guilt can

be drawn from the mere fact that the jury, in order to convict, must have disbelieved defendant's explanation of his relationship with May and Redden; only where the false statement or testimoney is intentional rather than merely mistaken and where such statement or testimony suggests that the defendant has no true exculpatory explanation can it be considered as an admission of guilt. (See concurring opinion of Justice Traynor in *People* v. *Albertson* (1944) 23 Cal.2d 550, 581-582 [145 P.2d 7]; *State* v. *Elsberg* (1941) 209 Minn. 167, 177 [295 N.W. 913].) Here defendant did not simply deny his guilt; he ventured upon an explanation so unusual that the triers of fact could conclude that it was an intentional fabrication indicating consciousness of guilt and the absence of any true exculpatory explanation." (41 Cal.2d at p. 823. See also *People* v. *Showers,* 68 Cal.2d 639 [68 Cal.Rptr. 459, 440 P.2d 939].)

We believe that defendant's testimony in the case at bar was of the kind described in the last sentence of the quote from *Wayne.*

The judgment is affirmed.

Aiso, J., and Reppy, J., concurred.