[Crim. No. 19758. Second Dist., Div. Five. Sept. 10, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ALAN BARTON, Defendant and Appellant.

## Counsel

Richard S. Buckley, Public Defender, John G. Hayes and Harold E. Shabo, Deputy Public Defenders, for Defendant and Appellant.

Eyelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

KAUS, P. J.—On October 20, 1961, defendant pleaded guilty to count II of information number 248951, charging him with grand theft (Pen. Code, § 487, subd. 1), and to count II of information number 248800 charging him with violating section 10851 of the Vehicle Code. He was represented by the public defender. On November 20, 1961, criminal proceedings in both matters were adjourned pending narcotic addiction commitment pro-

ceedings under then section 6451 of the Penal Code. On November 28, 1961, defendant was found to be addicted within the meaning of then section 6451 and ordered committed to the California Rehabilitation Center.

On November 18, 1968, criminal proceedings resumed in both matters and a supplemental probation report was ordered. On December 11, 1968, proceedings were suspended in both matters; defendant was placed on three years probation on certain terms and conditions, notably that he refrain from use of narcotics and submit to periodic anti-narcotic tests. No appeal was taken from this judgment (order granting probation).

On March 19, 1969, defendant was found to be in violation of probation. Probation was revoked and a bench warrant was issued for his arrest. On April 30, 1969, criminal proceedings were again adjourned in both matters pending proceedings under section 3051 of the Welfare and Institutions Code. Commitment pursuant to section 3051 followed on May 8, 1969. On November 14, 1969, the California Rehabilitation Center advised the superior court that defendant was being returned to the court's jurisdiction pursuant to section 3201 of the Welfare and Institutions Code.

On December 1, 1969, defendant sought to raise the issue of the applicability of *Boykin* v. *Alabama*, 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], to the entry of his guilty pleas, although his counsel admitted that this issue was decided adversely to his position in *In re Tahl*, 1 Cal.3d 122, 133, 135 [81 Cal.Rptr. 577, 460 P.2d 449].[1] Defendant was ordered committed to the Department of Corrections pursuant to section 1203.03 of the Penal Code. Defendant was returned to the court on January 8, 1970. A hearing was held at which defendant moved to withdraw his guilty pleas under section 1018 of the Penal Code. Proceedings were continued for the purpose of enabling defendant to submit affidavits and points and authorities in support of his motion. On January 27, 1970, defendant's motion under section 1018 was argued and denied. The order revoking probation was vacated. Defendant was restored to probation on the original terms and conditions. No appeal was taken from this judgment (order granting probation) either.

On April 28, 1970, probation was revoked and a bench warrant was issued. On September 18, 1970, defendant having been picked up on the bench warrant, probation remained revoked and defendant was sentenced to state prison, on each matter, the sentence on case number 248951 to run concurrently with that on case number 248800. On October 22, 1970,

---

[1]The transcript of the proceedings at which the guilty pleas were entered is not part of the record on appeal. There is a letter in the file dated October 30, 1970, from the court reporter advising the county clerk that all reporters' notes for 1961 were destroyed by fire.

defendant's request that the court file and execute a certificate of probable cause (Pen. Code, § 1237.5) was granted. This appeal from the September 18, 1970, judgment (order revoking probation) followed.

Defendant now seeks to assert as error the denial of his motion to withdraw his guilty pleas, both because of the court's failure to follow the procedure required by *Boykin* v. *Alabama, supra*, at the time the guilty pleas were entered, and because those pleas allegedly were induced by knowledge that the People would use defendant's statements, obtained in violation of *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], at the trial as they had done at his preliminary hearing.

### Boykin v. Alabama

■ Defendant recognizes that *Boykin* is not retroactive (*In re Tahl,* 1 Cal.3d 122, at pp. 133-135 [81 Cal.Rptr. 577, 460 P.2d 449]). He would distinguish *People* v. *Mendez,* 27 Cal.2d 20 [161 P.2d 929] on the basis that there the court at least asked the defendant whether he had "advised with" his attorney, while in the case at bar the record is barren. The point of *Mendez,* however, as interpreted in *Tahl,* is that the law, as it then stood, was satisfied if the defendant was represented by counsel at the time he pleaded guilty. It would be ridiculous to base a distinction just on whether or not the defendant told the court that he had consulted with counsel. (See *People* v. *Price,* 1 Cal.App.3d 982, 988-989 [82 Cal.Rptr. 55].)

Since the clerk's transcript shows that defendant was represented at the time he pleaded guilty, pre-*Boykin* law was satisfied.

### The Motion to Withdraw the Guilty Plea

It would be adequate for an affirmance if we merely said that the motion to withdraw the guilty plea was untimely. (See *People* v. *Brotherton,* 239 Cal.App.2d 195, at p. 202 [48 Cal.Rptr. 513].) Several years had passed since new constitutional concepts concerning the admissibility of voluntary confessions came into being. Further, the trial court did not have to believe the defendant's affidavit that but for his confessions he would not have pleaded guilty. The transcripts of the preliminary hearings show two exceptionally strong cases against defendant, quite apart from his confessions.

■ However, it seems to us that even if the motion to change defendant's plea had been made while the ink on *Escobedo* was not yet dry, and even if the trial court had believed that the guilty pleas were the product of the confessions, it was not compelled to grant the motion. The point is not that this case is not yet final and that, if this were an appeal from a

judgment based on a verdict or findings after a trial, the *Escobedo-Dorado* point would be viable. (*People* v. *Kellum,* 71 Cal.2d 352 [78 Cal.Rptr. 501, 455 P.2d 429].) Defendant's problem is that he pleaded guilty. The effect of a change in the law on guilty pleas antedating the change was examined by the Supreme Court of the United States in three decisions filed on May 4, 1970, a little after defendant attempted to change his plea. They are *Brady* v. *United States,* 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463]; *McMann* v. *Richardson,* 397 U.S. 759 [25 L.Ed.2d 763, 90 S.Ct. 1441] and *Parker* v. *North Carolina,* 397 U.S. 790 [25 L.Ed.2d 785, 90 S.Ct. 1458].

In *Brady* the defendant had pleaded guilty to a federal kidnaping charge (18 U.S.C.A. § 1201(a)). That was several years before the Supreme Court held in *United States* v. *Jackson,* 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209] that the portion of the statute which provided for a possible death sentence for its violation, was unconstitutional.

*McMann* involved three defendants all of whom had pleaded guilty in New York courts. They claimed that they had done so because they had previously been coerced into confessing. A subsidiary point was that at the time they would have gone to trial the New York state courts would have employed the procedure, later held unconstitutional in *Jackson* v. *Denno,* 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], in determining the voluntariness of the confessions.

In *Parker* the defendant had pleaded guilty to first degree burglary. North Carolina law, later repealed, provided for life imprisonment on guilty pleas to first degree burglary, but for a possible death penalty after a jury trial. Parker also claimed that he had been coerced into confessing before pleading but that his attorney erroneously advised him that the confession was admissible; but for such advice he would have stood trial with a good chance for an acquittal, if the confession were excluded.

The three cases reached the Supreme Court by different procedural avenues which we need not relate. Suffice it to say that none of the defendants was granted relief. In *Brady* the Supreme Court rejected the test whether "but for" a provision of the law, later held unconstitutional, the guilty plea would have been entered. (*Brady* v. *United States, supra,* 397 U.S. at pp. 749-750 [25 L.Ed.2d at p. 757].) The position of the court is perhaps most clearly stated in the following passages, the first from *Brady,* the second from *McMann:*

"The fact that Brady did not anticipate *United States* v. *Jackson, supra,* does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is

charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." (*Brady* v. *United States, supra,* 397 U.S. at p. 757 [25 L.Ed.2d at p. 761].)

"It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." (*McMann* v. *Richardson, supra,* 397 U.S. at p. 774 [25 L.Ed.2d at p. 775].)

*Parker,* of course, stands for the proposition that an attorney's failure to recognize the inadmissibility of a client's confession, is not necessarily the type of "serious dereliction" which would make the primary *McMann* reasoning inapplicable.[2] Obviously it is no dereliction of any kind not to foresee Supreme Court decisions which were greeted with some incredulity by many judges, defenders and prosecutors—particularly prosecutors.

It is, of course, recognized that defendant had spent an unusually long time behind bars of one kind or another for what, as such things go, are relatively minor felonies, involving no violence. We are gratified that, as his present counsel informs us, defendant is now on parole and doing well.

Judgment is affirmed.

Stephens, J., and Reppy, J., concurred.

---

[2]"For the reasons set out in *McMann* v. *Richardson,* 397 U.S. 759, even if Parker's counsel was wrong in his assessment of Parker's confession, it does not follow that his error was sufficient to render the plea unintelligent and entitle Parker to disavow his admission in open court that he committed the offense with which he was charged. Based on the facts of record relating to Parker's confession and guilty plea, which we have previously detailed, we think the advice he received was well within the range of competence required of attorneys representing defendants in criminal cases. Parker's plea of guilty was an intelligent plea not open to attack on the grounds that counsel misjudged the admissibility of Parker's confession." (*Parker* v. *North Carolina, supra,* 397 U.S. at pp. 797 to 798 [25 L.Ed.2d at p. 792].)