[Crim. No. 43045. Second Dist., Div. Three. Feb. 8, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN LEE POWERS, Defendant and Appellant.

COUNSEL

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward T. Fogel, Jr., and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ARABIAN, J.—

### INTRODUCTION

Appellant Brian Lee Powers appeals from a judgment rendered upon his plea of guilty to murder in the first degree (Pen. Code, § 187) and from jury convictions of first degree burglary (Pen. Code, § 459) and robbery (Pen. Code, § 211). He was 17 years of age at the time the crimes occurred. Pursuant to a plea bargain, the special circumstances allegations as to the murder count were stricken and on May 24, 1982, he was sentenced to 25 years to life imprisonment with possibility of parole. Subsequent to his sentencing, the California Supreme Court decided *People v. Spears* (1983) 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289], which held that the death penalty law, as amended by the Legislature and adopted at the 1978 general election, did not authorize a sentence of life imprisonment without possibility of parole for a minor; and *Carlos v. Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], which held that neither the death penalty nor life imprisonment without possibility of parole can be imposed upon a defendant who did not intend to kill or aid in a killing that occurs during the commission of a felony.

Appellant contends that in light of *Carlos* and *Spears,* his plea of guilty to murder in the first degree must be set aside. He also contends there is insufficient evidence to support his convictions for first degree burglary and robbery. We conclude that appellant's contentions cannot be sustained and we affirm the judgment.

PROCEDURAL HISTORY

In a nine-count information, appellant was charged along with codefendants Christopher Anthony Avieta and Edward Frank Murrieta of a series of felonies. As relevant here, count II charged all three with the murder of Charlie E. Griffith. It was alleged in regard to count II that burglary and robbery special circumstances applied. (Pen. Code, § 190.2, subd. (a)(17).) In counts IV and V the three defendants were charged with burglary (Pen. Code, § 459) and robbery (Pen. Code, § 211). It was alleged as to counts II, IV and V that each defendent had personally inflicted great bodily injury upon Griffith (Pen. Code, §§ 1203.075, 12022.7) and had committed crimes against a person 60 years of age or older. (Pen. Code, § 1203.09.)

Pursuant to stipulation, appellant's case was severed from the codefendants for trial. His trial was by jury. At the close of the presentation of evidence, appellant moved to strike the felony-murder special circumstances allegations, the allegation that he had personally inflicted great bodily injury on Griffith and the allegation he had committed crimes against a person 60 years of age or older. His motion to strike the felony-murder special circumstances allegations was denied. His motion to strike the allegations that he had personally inflicted great bodily injury on Griffith was granted, but the allegations that he had committed a crime against a person 60 years of age or older remained.

The jury found appellant guilty of first degree burglary and robbery (counts IV and V), but deadlocked as to the murder charge (count II), and the court declared a mistrial as to the murder charge against appellant in count II.

In later proceedings on the murder charge, appellant was rejoined as a defendant with Avieta and Murrieta. In accord with a plea negotiation, appellant pled guilty to murder in the first degree and the special circumstances allegations were stricken. Appellant was sentenced to state prison for a term of 25 years to life. The trial court stayed sentencing on counts IV and V on the ground that it was too late to sentence appellant as to those charges.[1]

STATEMENT OF FACTS

On October 22, 1980, Charlie Griffith, age 77, was attacked in his home, and robbed of personal property, including pennies which he collected. He died on November 17, 1980, as a result of the attack.

---

[1]At the sentencing hearing, on May 24, 1982, the judge stated that he would not impose a sentence on the two jury convictions because there had been no probation report prepared at the time of the convictions and no date had been set for sentencing. The court permanently suspended imposition of sentence on counts IV and V.

On the date of the crimes, at approximately 3:20 a.m., a next-door neighbor heard loud noises. From his window he was able to observe a man with a gun, wearing an olive green army field jacket, standing in the victim's living room. He called the police.

Sheriff's deputies arrived at the scene and observed Avieta and Murrieta leaving. Avieta was carrying a suitcase and wearing a long tan overcoat with a fur collar. Murrieta was carrying a sports bag and wearing a white T-shirt and baggy Levis. They dropped the bags and jumped over a fence. Both were apprehended. The bags were recovered and identified as belonging to the victim; both contained pounds of pennies. Pennies were also found on Avieta's person. The victim's home had been thoroughly ransacked.

Later that morning, a sheriff's deputy found another suitcase near a gate. Inside the suitcase was a fruitcake tin which contained a roll of pennies. Appellant's palm print, which was less than 24 hours old, was found on the lid of the cake tin. The weapon and army jacket were never located. Testimony established that appellant was a friend and associate of Avieta and Murrieta.

Appellant presented an alibi defense, contending that on the date of the crimes, he and his sister were at a friend's home until 3:30 a.m. Approximately one half hour after returning home, he received a phone call from another friend who told him that Avieta had been arrested. Appellant testified that he borrowed his sister's bicycle and went to the friend's house, but was unable to get a response. He then went to the crime scene and found an open suitcase; he looked through it, moving papers and touching a cake tin. After hearing a sound, appellant put the tin back in the suitcase and left the scene. On cross-examination appellant admitted that when he observed the suitcase he was sure it was related to Avieta's arrest; he admitted handling the cake tin.

## ISSUES

Appellant contends that: (1) the evidence was insufficient to support the jury's verdicts of guilty as to the robbery and burglary charges; (2) his motion to strike the felony-murder special circumstances allegations was erroneously denied because the evidence at trial did not show that he intended to kill nor that he intentionally aided and abetted the murder; (3) his plea of guilty to first degree murder must be set aside because (a) it was induced

by the unlawful felony-murder special circumstances allegations and (b) he received only an illusory benefit from his bargain.

DISCUSSION

I.

*Substantial evidence supports the jury's verdict that appellant is guilty of first degree burglary and robbery.*

■ Appellant does not contest that Griffith was robbed and that his home was burglarized. He argues only that the evidence was not sufficient to support the jury's finding that he was a culpable party. However, inasmuch as appellant's clear, fresh palm print was found on the metal cake tin at the crime scene, the evidence was sufficient, under the circumstances of this case, to support the jury's verdict.

■ " 'Fingerprint evidence is the strongest evidence of identity, and is ordinarily sufficient alone to identify the defendant.' [Citations.]" (*People* v. *Atwood* (1963) 223 Cal.App.2d 316, 326 [35 Cal.Rptr. 831]; *People* v. *Wise* (1962) 199 Cal.App.2d 57, 60 [18 Cal.Rptr. 343].) Generally speaking, whether fingerprints or palm prints of the accused are alone sufficient to identify the defendant as the perpetrator must depend upon the particular circumstances of the case. (*People* v. *Atwood, supra,* 233 Cal.App.2d at p. 326.)

In *Atwood,* the defendant's palm prints were found on a safe in a burglarized garage at a point inaccessible to the general public. The palm print was no more than three to five days old. The defendant testified he had been in the garage for a lawful purpose eight days before the burglary and again four or five days before the burglary but did not recall touching anything. The Court of Appeal noted that the jury was not required to believe the defendant. (*Id.,* at p. 327.) Moreover, the defendant's initial denial that he had ever been at the garage when compared against his contradictory testimony at trial constituted corroborative evidence showing a consciousness of guilt. (*Ibid.*) The court concluded that even had the jury believed defendant's story that he had visited the garage at a prior time, they could still reasonably infer his palm print was made at the time he committed the offense. (*Id.,* at p. 328.)

In *People* v. *Amador* (1970) 8 Cal.App.3d 788 [87 Cal.Rptr. 662], the defendant's fingerprints were found on a glass case in a burglary victim's home. The defendant testified that on the day of the burglary, he had been

drinking, and at the approximate time of the burglary, he was walking down the street by the victim's home looking for the address of a girlfriend. The door to the victim's home was open, and defendant claimed he walked in and called out his girlfriend's name. Then, while inside the victim's home, he picked up a box-like case that had been on the floor and put it down again; after two or three minutes he left, not taking anything with him. The house was in a state of disarray. (*Id.*, at p. 789.)

The *Amador* Court noted that while disbelief of testimony is not equivalent to affirmative evidence to the contrary, nevertheless, if a material fact is established by the evidence and it is shown that defendant's testimony as to that fact is wilfully untrue, this circumstance not only furnishes grounds for disbelieving other testimony presented by the defendant, but also tends to show consciousness of guilt. (*Id.*, at p. 791.)

■ As in *Amador,* Powers did not simply deny his guilt but ventured upon an explanation so unusual that the trier of fact could conclude that it was an intentional fabrication indicating consciousness of guilt and that there was an absence of any true exculpatory explanation. (*Id.*, at p. 792.)

Here, the jury was justified in concluding that appellant was at the scene. Not only did he leave his undeniable mark behind, but his story was not worthy of belief. Moreover, there was further evidence of his guilt. The next-door neighbor observed a person with a gun in the victim's home; that person was wearing an olive green army field jacket. Since no green coat or weapon was found at the scene or with either of appellant's codefendants, the jury could have concluded that there was a third individual present when the crimes were committed. Significantly, the evidence also showed that appellant was a close friend and associate of his two codefendants.

■ The test on appeal is whether substantial evidence supports the conclusion of the trier of fact. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *People* v. *Reilly* (1970) 3 Cal.3d 421, 425 [90 Cal.Rptr. 417, 475 P.2d 649].) To be substantial, the evidence must be of "ponderable legal significance . . . reasonable in nature, credible, and of solid value." (*People* v. *Johnson, supra,* 26 Cal.3d at p. 576; *People* v. *Bassett* (1968) 69 Cal.2d 122, 139 [70 Cal.Rptr. 193, 443 P.2d 777].) ■ Viewing the evidence in a light most favorable to the People and presuming in support of the judgment the existence of every fact the trier could reasonably deduce therefrom (*People* v. *Johnson, supra,* at p. 576; *People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]), it is manifest that the evidence is sufficient to establish appellant's guilt of both robbery and first degree burglary.

## II.

*Changes in the law subsequent to appellant's guilty plea do not require that his plea be set aside.[2]*

Appellant urges two grounds for setting aside his guilty plea: (1) the special circumstances of felony murder (Pen. Code, § 190.2, subd. (a)(17)) under the 1978 death penalty initiative should have been stricken because the evidence produced at trial did not show he *intended* to kill or aid in the commission of a killing and (2) his plea was given in exchange for an illusory benefit because as a minor he could not be charged with special circumstances nor sentenced to life imprisonment without the possibility of parole.

■ Essentially, appellant's complaint is that his plea was induced by the improper threat of the felony-murder special circumstances allegation which, if found true at trial, purportedly carried a mandatory sentence of life imprisonment without the possibility of parole.[3]

The record indicates that when appellant entered his guilty plea the parties assumed the 1978 initiative had changed the 1977 death penalty law so that (1) a defendant could be charged and convicted of murder with the special circumstance of felony murder even if he had *no intent* to kill or aid in the commission of a killing and (2) a minor could be sentenced to life imprisonment without possibility of parole. The California Supreme Court had not yet interpreted the 1978 death penalty initiative in those respects. Since the California Supreme Court decided *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862], and *People* v. *Spears* (1983) 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289], *after* appellant entered his plea of guilty, appellant contends those decisions require that his plea be set aside.

In *Carlos,* the Supreme Court interpreted two provisions of Penal Code section 190.2, enacted as part of the 1978 initiative. The first, paragraph 17 of subdivision (a), provides a penalty of death or life imprisonment without the possibility of parole if the "murder was committed while the defendant was engaged in or was an accomplice in the commission of . . ." nine listed felonies, including robbery and burglary. The second, subdivision (b), provides those penalties for "[e]very person whether or not the

---

[2]Although appellant apparently did not obtain the certificate of probable cause necessary to render his appeal from his guilty plea operative (Pen. Code, § 1237.5; Cal. Rules of Court, rule 31 (d); see *People* v. *Pinon* (1979) 96 Cal.App.3d 904, 909 [158 Cal.Rptr. 425]), we have nonetheless addressed his contentions on the merits.

[3]Penal Code section 190.5 specifically exempts minors from the death penalty.

actual killer found guilty of *intentionally* aiding, abetting, . . . or assisting any actor in the commission of murder in the first degree . . .'' (emphasis added) which falls within 18 listed special circumstances, including felony murder. The *Carlos* Court concluded the 1978 initiative should be construed to require an *intent* to kill or to aid in a killing as an element of the felony-murder special circumstance. (35 Cal.3d at pp. 153-154.)

In *Spears,* the Supreme Court held the death penalty law, as amended by the initiative adopted at the 1978 general election, did not authorize imposing the sentence of life imprisonment without possibility of parole on minors. (33 Cal.3d at p. 283.) The Court noted that in *People* v. *Davis* (1981) 29 Cal.3d 814, 827-832 [176 Cal.Rptr. 521, 633 P.2d 186], it held as a matter of statutory construction that the former death penalty law (Stats. 1977, ch. 316, p. 1255) did not authorize imposing that harsh penalty on persons under 18 years of age and that a similar analysis of the 1978 initiative led to the same conclusion. (33 Cal.3d at pp. 280-281; see generally pp. 280-284.)

If this were an appeal from the judgment based on a verdict or findings after a trial and after imposition of a sentence of life in prison without the possibility of parole, the *Carlos* and *Spears* points appellant urges might be viable.[4] However, as Justice Kaus, writing for Division Five of this court, aptly stated in *People* v. *Barton* (1971) 19 Cal.App.3d 990, at page 994 (italics added): *"Defendant's problem is that he pleaded guilty."*

In *Barton,* the defendant sought to withdraw his plea of guilty to charges of grand theft (Pen. Code, § 487, subd. 1) and taking or using a motor vehicle without permission (Veh. Code, § 10851). Barton alleged, inter alia, that he had been induced to plead guilty by knowledge that the prosecution would have used at trial statements which would have been held inadmissible in years subsequent to his plea because obtained by the prosecution in violation of *Escobedo-Dorado* standards.[5] The court held Barton's guilty pleas were valid.

The *Barton* decision was based in part on three then new United States Supreme Court cases which examined the effect on a guilty plea of a change

---

[4]In *People* v. *Spears, supra,* 33 Cal.3d at page 283, the court modified the defendant's sentence from two consecutive terms of life imprisonment without possibility of parole to two consecutive terms of twenty-five years to life.

In *Carlos* v. *Superior Court, supra,* 35 Cal.3d at page 154, footnote 21, the court stated that it did not decide whether the decision would apply retroactively to cases already tried, nor did it determine what test of prejudice controls for a case in which the court erroneously failed to instruct on the necessity of intent to kill for a felony murder special circumstance under the 1978 initiative.

[5]*Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

in the law subsequent to the plea. The cases cited by the *Barton* Court are *Brady* v. *United States* (1970) 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463]; *McMann* v. *Richardson* (1970) 397 U.S. 759 [25 L.Ed.2d 763, 90 S.Ct. 1441]; and *Parker* v. *North Carolina* (1970) 397 U.S. 790 [25 L.Ed.2d 785, 90 S.Ct. 1458].

In *Brady,* the defendant was charged with kidnaping (18 U.S.C.A. § 1201(a)), a crime which provided for the death penalty only upon recommendation of a jury and thereby made the risk of death the price of a jury trial. After originally pleading not guilty, Brady learned that his codefendant had entered a plea of guilty and would be available to testify against him. Brady then changed his plea to guilty. Several years after Brady's plea, the United States Supreme Court, in *United States* v. *Jackson* (1968) 390 U.S. 570 [20 L.Ed.2d 138, 88 S.Ct. 1209], declared the death penalty provision unconstitutional and Brady sought relief from his plea claiming, among other things, that it was induced by the unconstitutional penalty provision of the statute.

*McMann* involved three defendants who had pleaded guilty in unrelated cases in various New York state courts and were seeking to have their pleas set aside. They claimed their pleas of guilty were the products of coerced confessions and that the pleas had been entered before *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205], in which the United States Supreme Court declared unconstitutional certain New York procedures for determining the voluntariness of confessions. The defendants contended constitutionally acceptable procedures to test the voluntariness of their confessions had not been available to them when their pleas were entered.

In *Parker,* the defendant had pleaded guilty to first degree burglary under a state statute, later repealed, which provided for life imprisonment on guilty pleas to first degree burglary, but for a possible death penalty after trial by a jury. Parker claimed his guilty plea was induced by an unconstitutional statute and that it was the product of a coerced confession.

The United States Supreme Court did not grant relief to the *Brady, McMann* or *Parker* defendants. In *Barton* (19 Cal.App.3d at p. 994), the court noted that in *Brady* (397 U.S. at pp. 749-750 [25 L.Ed.2d at p. 757]), the Supreme Court rejected the test whether "but for" a provision of the law, which is later held unconstitutional, the guilty plea would have been entered. The *Barton* court quoted with approval the following passages from *Brady* and *McMann* as the clearest expressions of the Supreme Court's position:

" 'The fact that Brady did not anticipate *United States* v. *Jackson, supra,* does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.' (*Brady* v. *United States, supra,* 397 U.S. at p. 757 [25 L.Ed.2d at p. 761].)

" 'It is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not after all, a knowing and intelligent act.' (*McMann* v. *Richardson, supra,* 397 U.S. at p. 774 [25 L.Ed.2d at p. 775].)" (19 Cal.App.3d at pp. 994-995.)

We would add still another passage from *Brady* which explains the Supreme Court's position: "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." (*Brady* v. *United States, supra,* 397 U.S. at p. 757 [25 L.Ed.2d at p. 761].)

The only other California decision we have found which involves circumstances analogous to those in the case at bench is *People* v. *Johnson* (1972) 28 Cal.App.3d 653 [104 Cal.Rptr. 807]. Johnson was charged with first degree murder and waived his right to a jury trial in exchange for the prosecution's promise not to seek the death penalty. He was tried by the court, found guilty and sentenced to life imprisonment. (*Id.,* at pp. 655-656.) Eight months later, the California Supreme Court, in *People* v. *Anderson* (1971) 6 Cal.3d 628, 657 [100 Cal.Rptr. 152, 493 P.2d 880], held

the death penalty unconstitutional and retroactively modified death sentences to life imprisonment.

*Johnson* contended his waiver of a jury trial, induced by fear of the death penalty, required a reversal of his conviction. (28 Cal.App.3d at pp. 658-659.) The *Johnson* court disagreed stating: "The fairness of an agreement is gauged by the values existing when the bargain is made. When Johnson waived his right to a jury trial, the threat of the death penalty was a real and significant factor. The fact that the death penalty was later declared unconstitutional should not be permitted to vitiate the waiver, even though fear of its imposition may have been a motivating factor in bringing it about." (*Id.*, at p. 659.)

Further, in *Johnson* the court determined the applicability of *Anderson* "should not be extended to cases where consideration of the possibility of the imposition of the death penalty merely affected a course of conduct designed to avoid its consequences." (*Ibid.*) The *Johnson* court (at pp. 659-660) stated that its conclusion was analogous to that reached in *Brady* v. *United States, supra,* 397 U.S. 742 [25 L.Ed.2d 747, 90 S.Ct. 1463] and was compatible with the reasoning in *Parker* v. *North Carolina, supra,* at 397 U.S. 790 [25 L.Ed.2d 785, 90 S.Ct. 1458] and quoted with approval the following passage from *Parker*:

" 'It may be that under *United States* v. *Jackson,* 390 U.S. 570 . . . , it was unconstitutional to impose the death penalty under the statutory framework which existed in North Carolina at the time of Parker's plea. Even so, we determined in *Brady* v. *United States* [397 U.S. 742] that an otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial. In this respect we see nothing to distinguish Parker's case from Brady's.' (*Parker* v. *North Carolina,* 397 U.S. 790, 794-795 [25 L.Ed.2d 785, 790-791, 90 S.Ct. 1458, 1461].)"

In conclusion, the *Johnson* court observed:

"The entry of a plea of guilty necessarily includes the requirement of an intelligent waiver of the right to a trial by jury. (*Boykin* v. *Alabama,* 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 279-280, 89 S.Ct. 1709, 1712]; *In re Tahl,* 1 Cal.3d 122, 130 [81 Cal.Rptr. 577, 460 P.2d 449].) If such a plea, even though induced by a desire to avoid the possible imposition of the death penalty, stands when that penalty is later declared unconstitutional, it follows the waiver of the less extensive and included right to trial by jury also survives the same circumstance." (28 Cal.App.3d at p. 660.)

In sum, appellant's contention that his plea must be set aside because it was coerced by the felony-murder special circumstances allegations is answered by the *Barton* and *Johnson* decisions in which the California Court of Appeal adopted the reasoning of the United States Supreme Court in *Brady, McMann,* and *Parker.* Appellant's final contention, that his plea bargain was illusory, is negated by the simple observation that appellant received in exchange for his plea a guarantee that he would not stand trial with his two cohorts and that his sentence would provide for the possibility of parole no matter how the California Supreme Court eventually interpreted the 1978 death penalty initiative. In essence, appellant opted for, *and received,* certainty in hand rather than rolling the dice with two in the bush.

Therefore, the fact that California Supreme Court decisions subsequent to appellant's guilty plea have established that a felony-murder special circumstance allegation requires an intent to kill or aid in a killing (*Carlos* v. *Superior Court, supra,* 35 Cal.3d 131) and that a minor cannot be sentenced to life imprisonment without possibility of parole (*People* v. *Spears, supra,* 33 Cal.3d 279) does not affect appellant's voluntary guilty plea nor the sentence which has been lawfully imposed on him.

#### CONCLUSION

The judgment entered upon appellant's plea of guilty to murder in the first degree is affirmed.

Klein, P. J., and Lui, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 3, 1984.