Filed 12/31/25  P. v. Hammond CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAYNE LOGAN HAMMOND,<br><br>Defendant and Appellant. | C101137<br><br>(Super. Ct. No. 23F5503) |

Defendant Dayne Logan Hammond appeals his convictions for arson.  On appeal, he challenges the trial court's refusal to set aside his no contest plea and argues the court abused its discretion in denying his motion.  We conclude the trial court acted within its discretion and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*Underlying Circumstances/Charges/Plea*

On the night of July 3, 2023, a Cal Fire officer responded to the report of a stabbing in a wooded camping area.  After arriving on scene, the officer learned that

1

defendant was stabbed in the abdomen by his brother during an altercation. Due to the remote location, the officer drove defendant to the ambulance then returned to the scene where the brother was cleaning up his camping equipment and packing his car.

Defendant's brother told the Cal Fire officer that defendant drank an entire bottle of whiskey and engaged him in a physical fight. Defendant pinned his brother to the ground and, scared for his life, the brother stabbed defendant. Defendant's brother was then able to get up and run down the road to call 911. Defendant's brother told the 911 operator that defendant pushed the brother's tent "over the campfire ring." About 30 feet from defendant's brother's car, the Cal Fire officer saw the "burned plastic remnants of a tent, tent poles, [an insulated cup], an empty bottle of whiskey, other unidentifiable plastic items and burned bark." It also appeared as though a fire had "burned over the entire campfire ring and extended into the vegetation around it."

In August 2023, the prosecution charged defendant with arson of forest land, arson of the property of another, recklessly causing a fire of forest land, and misdemeanor recklessly causing fire to the property of another.

In October 2023, defendant pled no contest to one of the felony arson charges and the misdemeanor.[1] In exchange for his plea, the prosecution agreed to the following terms: (1) Sentencing would be delayed for one year; (2) defendant would be released on his own recognizance; and (3) defendant would, within a month of his release, enroll in a minimum two-year "recovery contract" with the Ohio Lawyers Assistance Program (assistance program) in his home state of Ohio.

The parties also agreed that if defendant fulfilled the terms of the plea agreement and obeyed all laws, at the time of sentencing, the trial court would dismiss the felony count and place defendant on one year of informal probation on the remaining

---

[1] There is no reporter's transcript from the plea hearing. The parties did, however, submit a settled statement of that hearing.

misdemeanor count, with credit for time served. Defendant further agreed that if he did not comply with the terms of his plea agreement, the plea would become an open plea, and the trial court could sentence him up to the maximum term of three years on the felony arson charge. On the prosecution's motion, the trial court dismissed the remaining felony counts.

## II

*Motion To Withdraw Plea Agreement*

### A

*Defendant's Arguments*

On April 29, 2024, defendant filed a motion to withdraw his plea. In support of his motion, defendant submitted a declaration from trial counsel declaring that, to the best of his knowledge, defendant agreed in his plea agreement that "if he complied with certain requirements, the felony charge would be dismissed." Since returning to Ohio, however, "it became clear that completion of those requirements were [*sic*] impossible for reasons beyond his control."

In the memorandum of points and authorities, trial counsel argued that, after defendant returned to Ohio, "he was given the opportunity to withdraw from the [law school] or he would be expelled. He withdrew.

"Thereafter, [the assistance program] informed him that [it] would not contract with him nor assist him in any way. This made it impossible for him to fulfil the requirements of his plea." Thus, defendant asked the court "to set aside his previously entered pleas. At the time . . . defendant entered his plea, he was being held in custody at Shasta County Jail and unaware that his time in law school would soon come to an end. When that came to pass, it became impossible for him to fulfill the requirements of his [plea] agreement."

3

B

*The Prosecution's Arguments*

The prosecution opposed the motion. It argued defendant failed to present any evidence and failed to demonstrate any prejudice. It also argued that, after he was detained on this matter in July 2023, defendant made no effort to contact the law school to discuss his options. Defense counsel apparently relied on defendant's assertions and also failed to reach out to the law school.

The prosecution submitted additional evidence to the trial court, which it argued demonstrated that, at the time of his plea agreement, defendant could not reasonably have believed he would be allowed to return to law school. According to the prosecution, defendant appeared to be intentionally misleading counsel and the court about his circumstances.

According to the evidence submitted by the prosecution in the trial court, defendant began law school in the fall of 2021. He last attended law school in the fall of 2022. In October 2022, one of defendant's fellow law students reported him for sexual harassment, including sending her unsolicited nude photos and trying to give her money in exchange for sex. As a result of her report, criminal charges against defendant were filed on October 19, 2022.

On November 7, 2022, defendant executed a two-year mental health contract with the assistance program.[2] He also executed an authorization for disclosure of his medical

---

[2] The prosecution argued in the trial court that defendant was ordered by the Supreme Court of Ohio to participate in the assistance program but failed to sign the contract. That statement is not supported by the record. The document the prosecution submitted is a mental health contract with the assistance program (which appears to include a pro forma "by order of the Supreme Court") and it is executed by defendant on the last page of the contract. Defendant did not, however, execute the document that authorized the release of information to the Supreme Court of Ohio, the Board of Commissioners, or the Ohio State Bar Association Admissions Committee.

records and selected a person to monitor his performance under the assistance program contract. The assistance program recommended defendant begin treatment for substance use disorder and mental health issues, call the assistance program twice each week to provide updates on his treatment, keep the assistance program informed of any court ordered treatments, and sign a contract for two years of monitoring by the assistance program. Three days later, defendant pled guilty to "telecommunication harassment" in the Municipal Court of Akron, Ohio. As part of his sentence, the municipal court ordered defendant to engage in and complete the assistance program and "obey all laws for a period of [one] year in lieu of a period of confinement."

As a result of his plea, an associate dean at the law school referred defendant to the academic/discipline committee (committee) for "a potential [h]onor [c]ode violation in the form of unprofessional conduct." The associate dean found it "important to note" that, at the time, criminal charges were pending against defendant in South Carolina. Those charges included second degree assault and battery, and promoting obscenity. The obscenity charges, the associate dean said, were the result of harassing conduct similar to that which defendant engaged in at the law school.

On January 6, 2023, defendant admitted to the truth of the allegations made by his fellow law student; he also admitted his conduct violated the law school's honor code. The committee proceeded to a hearing solely on the proposed sanction. Following that hearing, the committee issued several "findings of fact." Among them, the committee found defendant misrepresented his sobriety in his written submission to the committee.

Specifically, defendant claimed he had " 'remained entirely sober' " since January 1, 2023, and " 'fulfilled [the assistance program] requirements.' " Based on additional evidence submitted to the committee, however, these statements were found to be false. Defendant argued he did not consider a "moderate consumption of alcohol to necessarily be bad." But, the committee observed, consumption of alcohol in any amount violated defendant's contract with the assistance program and his treatment for substance

5

abuse. Defendant also said the statements in his "brief regarding no consumption of alcohol were inadvertently left in from earlier drafts."

On February 21, 2023, the committee found, based on defendant's own admission, that he violated the student disciplinary code by harassing a fellow law student. The committee recommended defendant be suspended from the law school for two semesters. Prior to reenrolling, defendant would be required to meet with one of the assistant deans and present evidence that he successfully fulfilled the assistance program "treatment plan and therapeutic plan for treatment both of which should address the safety of the legal community and the Akron [l]aw [c]ommunity." Defendant also would be "required to present evidence that [he] is prepared to succeed in legal education and comply with all requirements for [law school] students."

On March 6, 2023, the dean of the law school (dean) accepted the committee's findings and recommendations. The dean suspended defendant from the law school for two semesters (he would not be eligible to reenroll until after the fall 2023 semester) and withdrew all scholarship aid previously offered to defendant. The dean also noted the disposition would be "reported to the Bar authorities in whichever jurisdiction(s) [defendant] may seek admission."

In June 2023, apparently after he was arrested for driving under the influence, a "[p]robation [o]fficer/[a]lcohol [e]valuator" with the "Fifth Judicial District Alcohol Unit" in Breckenridge, Colorado directed defendant "to enroll in [a to be determined] [a]lcohol/[d]rug [t]reatment [p]rogram within ten (10) days of [his] sentencing or evaluation date, whichever is later." And on August 30, 2023, the superior court in Breckenridge, Colorado sentenced defendant to supervised probation for 24 months. The Colorado court ordered defendant to abstain from alcohol and illegal substances, obey all laws, complete "[l]evel II" alcohol education and 86 hours of therapy "at a state certified agency within the term of probation," and "[c]omplete additional therapy as indicated in the alcohol and/or drug evaluation." The court suspended a sentence of 365 days in

6

county jail pending successful completion of probation. The court noted that defendant lived in Ohio and would be supervised there.

On December 14, 2023, defendant submitted a written exit interview to the law school. When asked to state his reason for withdrawing from the law school, defendant wrote "[r]ehabilitation for substance abuse."

C

*Hearing*

On May 6, 2024, the trial court heard defendant's motion to withdraw the plea agreement. At the court's request, defendant himself joined in the motion on the record. Defendant offered no additional evidence in support of his motion. The court noted that, although defendant carried the burden on the motion, the prosecution's evidence gave "a little bit more background as to the circumstances that surrounded the plea." The court then issued a tentative ruling.

In its tentative ruling, the trial court found it was likely defendant had the idea to "center" his plea agreement on participation in the assistance program. Defendant also was the only one who knew the extent of his "legal problems both in law school and in several states." Defendant "kept his school, the Colorado court, the South Carolina court, [and] this court all rather compartmentalized." Defendant "chose to attempt to walk this very narrow path to try to attempt to juggle all these balls in the air and simply at the end was unable to do so, and after he signed the plea, everything came crashing down."

The trial court concluded defendant created the situation he found himself in. Defendant should have known the law school would not allow him to remain in school under the circumstances, circumstances for which defendant was solely responsible. Defendant also should have known that, if he was not enrolled in law school, the assistance program would not be an option. The court found defendant was not "lying to the court or being deceptive . . . just outrageously and naively optimistic." Nevertheless, the court concluded, defendant should be held to answer for his choices.

7

In sum the trial court tentatively ruled: "I don't believe [defendant has] met his burden with regard to showing that this is an impossibility based upon something that wasn't his fault. I think this is something that entirely was his fault based upon the circumstances that I've seen outlined from the [prosecution's] exhibits."

After hearing argument from defendant's counsel, the trial court adopted its tentative ruling and denied the motion to withdraw. The court then dismissed the misdemeanor charge and placed defendant on two years of formal probation.

Defendant appeals; the trial court granted his request for a certificate of probable cause.

DISCUSSION

Defendant contends the trial court abused its discretion in denying his motion to withdraw the plea. We disagree.

Penal Code section 1018 provides that "[o]n application of the defendant at any time before judgment or within six months after an order granting probation is made if entry of judgment is suspended," the trial court may, for good cause shown, permit a plea of guilty to be withdrawn. The burden of proof is clear and convincing evidence of good cause. (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) The plea may be withdrawn for mistake, ignorance, inadvertence, or any other factor overreaching a defendant's free and clear judgment. (*Ibid*.) The requirement that a defendant make a convincing showing of good cause has been said to "codify the rule that leave to withdraw a plea with its resulting inconvenience and expense should not be lightly granted." (*People v. Waters* (1975) 52 Cal.App.3d 323, 331.)

"Although the section is to be liberally construed, 'the withdrawal of such a plea rests in the sound discretion of the trial court and a denial may not be disturbed unless the trial court has abused its discretion.' " (*In re Brown* (1973) 9 Cal.3d 679, 685.)

Here, defendant argues that, at the time he entered into his plea agreement, he believed the assistance program was a viable option. After he entered into his plea,

8

however, defendant was forced to withdraw from law school. And when he was no longer enrolled in law school, he was no longer eligible to participate in the assistance program. This unforeseen change in circumstances, he argues, was sufficient cause to withdraw the plea agreement, and the trial court abused its discretion in finding otherwise. We are not persuaded.

Courts have previously rejected as good cause to withdraw a plea agreement such claims as psychological pressure from counsel, including bad tactical advice (*People v. Urfer* (1979) 94 Cal.App.3d 887, 892); unforeseen changes in circumstances that make the plea agreement less attractive to the defendant (*People v. Powers* (1984) 151 Cal.App.3d 905, 917); mistaken expectations of a lenient sentence, even if a result of good faith (but wrong) advice from counsel (*People v. Fratianno* (1970) 6 Cal.App.3d 211, 221-222, and cases cited therein) or a result of a good faith reliance upon nonbinding, nonmisleading remarks of the court or prosecutor (*People v. Spears* (1984) 153 Cal.App.3d 79, 87-88; *People v. Vento* (1989) 208 Cal.App.3d 876, 879-880); and a mistaken belief in the strength of the prosecution's case (*People v. Watts* (1977) 67 Cal.App.3d 173, 183). Defendant's unforeseen inability to participate in the assistance program, assuming it was unforeseen, offers no greater cause than any of these.

Moreover, in the approximately nine months before defendant was arrested in Shasta County for arson, he had already been accused and convicted of harassment in Ohio, found in violation of his law school's honor code, suspended from law school, and arrested on drunk driving charges in Colorado. After he was arrested in Shasta County, but before he entered into the plea agreement here, defendant was placed on formal probation in Colorado and ordered to complete alcohol education classes and more than 80 hours of therapy.

There is no evidence in the record defendant disclosed any of this information to the trial court, the prosecution, or even his own counsel prior to negotiating his plea agreement. Keeping his circumstances to himself, defendant then negotiated a plea

9

agreement that required him to complete a two-year contract with the assistance program, a program which he was already failing.  Nevertheless, the plea agreement did contemplate what would happen if defendant failed to complete a two-year program with the assistance program:  The plea would open, and defendant would face a maximum term of three years in prison.  Thus, whether it was because he would not or could not complete a two-year contract with the assistance program, his failure to do so was addressed by the terms of the plea agreement.  Defendant does not contend otherwise.

In sum, we find no abuse of discretion.

DISPOSITION

The judgment is affirmed.


/s/
ROBIE, J.


We concur:


/s/
HULL, Acting P. J.


/s/
FEINBERG, J.


10