Filed 7/18/22 P. v. Ventura CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>CHRISTIAN ANGEL VENTURA,<br><br>      Defendant and Appellant. | F081771<br><br>(Super. Ct. No. VCF306221)<br><br>**ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is hereby ordered that the opinion filed herein on June 29, 2022, be modified as follows:

1. On page 20, the second sentence of the first paragraph should be replaced with the following:

    Further, the record lacks any affirmative indication that Ventura knew Vasquez was likely to use lethal force—at least prior to the point when Vasquez began stabbing Hernandez.

Except for the modification set forth, the opinion previously filed remains unchanged.

This modification does not effect a change in the judgment.

SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


DESANTOS, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CHRISTIAN ANGEL VENTURA,<br><br>    Defendant and Appellant. | F081771<br><br>(Super. Ct. No. VCF306221)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County. Melinda Myrle Reed, Judge.

Susan L. Jordan, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# **INTRODUCTION**

In 2017, appellant Christian Angel Ventura entered a plea of no contest to voluntary manslaughter (Pen. Code,[1] § 192), robbery (§ 211), and shoplifting (§ 459.5). In addition, Ventura admitted to two criminal street gang enhancements (§ 186.22, subd. (b)(1)(B) & (C)), and that he had suffered a prior strike conviction within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). In exchange for a stipulated prison sentence of 32 years four months, Ventura agreed to cooperate with the People in the investigation and prosecution of Uriel Vasquez and Raul Cardona, Ventura's accomplices to the crime.

On January 1, 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) was enacted, eliminating the natural and probable consequences doctrine and amending the felony murder rule as it pertains to vicarious murder liability.

In August 2020, Ventura filed a motion to withdraw his plea/request for the trial court to withdraw its assent to the plea agreement. The trial court denied Ventura's motion. On appeal, Ventura contends the trial court abused its discretion in so doing. In supplemental briefing, Ventura further contends that the recent enactment of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill No. 775) (Stats. 2021, ch. 551)—which extended Senate Bill No. 1437's ameliorative provisions to convictions for attempted murder and manslaughter—supplies good cause to withdraw from his plea. We disagree.

The main problem is that Ventura is attempting to put the proverbial cart before the horse. Ventura begins from the assumption that he could not be convicted of murder under the new laws, and based on this premise, he argues he is therefore entitled to withdraw his manslaughter plea. However, in our view, the new laws simply afford Ventura the opportunity to make his case by seeking an evidentiary hearing under the new legislation where the prosecution must prove Ventura remains eligible for murder

---

[1] All undefined statutory citations are to the Penal Code unless otherwise indicated.

liability. Ventura seeks to bypass this step in the process and obtain the relief on appeal without ever making a prima facie case for relief in the trial court. For the reasons discussed in this opinion, we are not persuaded that he is entitled to such relief. We therefore affirm.

## PROCEDURAL HISTORY

On March 2, 2016, in case No. VCF306221, the Tulare County District Attorney's Office filed an information charging Ventura with murder (§ 187, subd. (a); count 1); active participation in a criminal street gang (§ 182.5; count 2); second degree robbery (§ 211; counts 3 & 4); and conspiracy to commit shoplifting (§§ 182, subd. (a)(2)/459.5, count 5).[2] As to count 1, the information further alleged a robbery-murder special circumstance (§ 190.2, subd. (a)(17)), a gang enhancement (§ 186.22, subd. (b)), and an on bail enhancement (§ 12022.1). As to counts 3 and 4, the information alleged Ventura had personally used a deadly weapon in the commission of the crime. (§ 12022, subd. (b)(1).) As to all counts, it was alleged that Ventura had suffered a prior strike conviction within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

On August 2, 2016, following argument by the parties, the Honorable Lloyd L. Hicks denied Ventura's section 995 motion.

On June 29, 2017, Ventura entered a no contest plea pursuant to *People v. West* (1970) 3 Cal.3d 595, to voluntary manslaughter, one count of robbery, and one count of second degree burglary. He also admitted the gang enhancement for the voluntary manslaughter (§ 192) and robbery counts (§ 211), the prior strike allegation (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and that he had suffered a prior serious felony conviction (§ 667, subd. (a)). The Honorable Gary Paden took Ventura's plea. The

---

[2] Counts 3 and 4 resulted from case No. VCF305460 and count 5 resulted from case No. VCF306219.

3.

parties stipulated the factual basis for the plea was based upon the transcript from Ventura's preliminary hearing.

On August 5, 2017, in front of Judge Paden, Ventura's prior plea was withdrawn. The plea agreement was modified to reduce the burglary conviction to a misdemeanor and the court struck Ventura's prior serious felony conviction. The total stipulated prison term of 32 years four months remained unchanged. Ventura entered a plea of no contest to voluntary manslaughter (§ 192) and robbery (§ 211), both with gang enhancements, and to misdemeanor shoplifting (§ 459.5). Ventura also admitted the prior strike allegation. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) The parties stipulated that the factual basis for the plea was based upon the preliminary hearing transcripts or police reports.

On October 28, 2017, Ventura testified at Cardona's preliminary hearing. Cardona was one of his accomplices.

On January 1, 2019, the Legislature enacted Senate Bill No. 1437 to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

On January 14, 2020, a substitution of counsel was filed in Ventura's case.

On August 6, 2020, Ventura filed a motion to withdraw his plea/request for the trial court to rescind its assent to the agreement so that he could renew his section 995 motion.

On August 27, 2020, following additional briefing and argument by the parties, the Honorable Judge Melinda Reed denied the motion. Ventura waived his rights

4.

under *People v. Arbuckle* (1978) 22 Cal.3d 749 and was sentenced to a term of 34 years four months in state prison in accordance with his negotiated sentence.

Ventura filed a timely notice of appeal. His request for a certificate of probable cause was granted by the trial court.

## FACTS

### *The Underlying Crime*

The following statement of facts is derived from the transcript from Ventura's February 8, 2016 preliminary hearing.

On September 10, 2014, at around 1:53 a.m., Officer Quintero with the Dinuba Police Department was dispatched to Delgado Park, where he found Arturo Hernandez deceased. Hernandez had suffered multiple puncture wounds to his torso.

C.P., a witness, observed Ventura and Raul Cardona together at about midnight. C.P. identified Ventura and Cardona pursuant to a photographic lineup. That same morning, M.R., a nearby neighbor, heard an argument. She looked outside of her bathroom window and saw three men fleeing. She also heard an individual crying for help.

On September 12, 2014, Ventura was arrested for an unrelated burglary and questioned by Quintero. During questioning, Ventura stated that on the morning of the murder, he was at Delgado Park with Uriel Vasquez and Raul Cardona when Hernandez approached them. Cardona and Hernandez started fighting. Hernandez tried to flee by running toward an alleyway, but the group pursued Hernandez and assaulted him.

Ventura punched and kicked Hernandez. During the incident, Hernandez's pockets were searched. At some point during the altercation, Vasquez unintentionally stabbed Cardona's arm.

As Ventura began to run away, he claimed that he turned and saw Vasquez on top of Hernandez, stabbing him. Ventura and Vasquez then fled to Ventura's residence.

5.

Later that same morning, Ventura located a screwdriver wrapped in a cloth on the counter of his home. Ventura retrieved the screwdriver with his hands and stored it. Officer's searched Ventura's home and located a screwdriver and blood-stained shorts underneath a sink in a cabinet. The blood belonged to Hernandez.

On September 17, 2014, Quintero spoke to H.E. H.E. told Quintero that on the morning of the murder, he had spoken with Cardona, and while at Cardona's residence, he located a wallet in Cardona's backyard. When H.E. examined the wallet, he found identification cards inside belonging to someone with the last name of Hernandez. Cardona burned the wallet.

Quintero asked H.E. whether he knew how Hernandez had died. H.E. stated that Hernandez had been stabbed with a screwdriver.

### Trial Court's Ruling on Ventura's Motion to Withdraw the Plea

On August 6, 2020, Ventura filed a motion to withdraw his plea/request for the court to rescind its approval of the plea agreement. He did not attach a sworn affidavit to his motion.

On August 27, 2020, following consideration of written briefs by the parties, the trial court denied Ventura's motion to withdraw from the plea. Ventura did not testify at the hearing on his motion.

Prior to explaining the reasons for its ruling, the prosecutor addressed section 1016.8, which became effective on January 1, 2020. Under section 1016.8, subdivision (b), any "provision of a plea bargain that requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy." Defense counsel argued that prohibiting Ventura from withdrawing from his plea to take advantage of a subsequent change in the law brought section 1016.8's prohibition into operation. The court observed that there was no provision in the plea

agreement which would conflict with section 1016.8, but found the principle generally applicable.

The trial court denied Ventura's motion for several reasons. First, the court explained that "[b]oth sides agree that there is no basis for the motion under Penal Code section 1170.95 because defendant's pleas here involve voluntary manslaughter and not murder."

The trial court then summarized the evidence adduced at the preliminary hearing as follows:

> "As to the facts underlying the charges of the evidence produced at the preliminary hearing and argued by both sides, shows that the defendant and the two co-defendants pursued the victim after an altercation in a park late at night. Defendant admitted beating and assaulting the victim. One of defendant's co-defendants stabbed the victim repeatedly with a screwdriver, causing his death. A witness saw three persons fleeing from the victim as he cried for help.
>
> "The defendant described the co-defendant's actions as finishing him off. The screwdriver with the victim's blood traces was found at the defendant's house, where he admittedly fled to with the co-defendant who stabbed the victim. The defendant's clothes had blood on them, presumably, although I recognize there's a dispute between the parties as to whether that was the defendant's blood or the victim's blood or not."

The parties corrected the trial court by clarifying that the victim's blood was on the shorts recovered from Ventura's home, but they disputed whether the shorts belonged to Ventura or Vasquez.

Second, the court held that from the evidence adduced at the preliminary hearing, "the defendant was a principle in the murder by aiding and abetting the killing of the victim." According to the court, Ventura "intended to kill the victim, … was a major participant in the crime of robbery, and acted with reckless disregard and indifference to human life under Penal Code Section 189(e)."

7.

Finally, the trial court observed there had been no claim of error by Ventura which would support the conclusion that his plea was not knowingly and voluntarily made. The court further held that the record did not support prejudice to Ventura from entering into a negotiated plea, stating: "I find defendant did receive a substantial benefit from the plea as he was facing the death penalty and the aspect or potential of life without the possibility of parole. [¶ ] Indeed, there were three different felony cases involved in this plea, and they were negotiated overall favorably to the defendant. I'm not convinced that defendant would have had a better outcome or that there is a likelihood of a better outcome for defendant if he would have gone to trial."

## DISCUSSION

### I.    The Trial Court's Denial of Ventura's Motion to Withdraw From His Plea/Request for the Court to Rescind its Approval of the Agreement

Ventura contends that a subsequent change in the law—the enactment of Senate Bill No. 1437 and Senate Bill No. 775—constitutes good cause to withdraw his plea of no contest, and that the trial court abused its discretion in denying his motion to withdraw his plea. We conclude Ventura has failed to meet his burden of showing the trial court abused its discretion in denying his motion.

#### A.    Senate Bill Nos. 1437 and 775

Senate Bill No. 1437, effective January 1, 2019, was enacted to amend the felony-murder rule and eliminate the natural and probable consequences doctrine as it relates to murder. (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 275.) To that end, Senate Bill No. 1437 amended sections 188 and 189 and added section 1170.95 to the Penal Code. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*).)

Senate Bill No. 1437 added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *Gentile*, *supra*, 10 Cal.5th at pp. 842-843.) The bill also

8.

amended section 189, subdivision (e), by limiting the circumstances under which a person may be convicted of felony murder:

> "A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); accord, *Gentile*, *supra*, 10 Cal.5th at p. 842.)

Finally, Senate Bill No. 1437 added section 1170.95 to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at p. 843.)

Our Supreme Court previously held that the exclusive method to obtain relief under Senate Bill No. 1437 was through the petition procedure set forth under section 1170.95. (*Gentile, supra,* at pp. 851-852 ["[t]he ameliorative provisions of Senate Bill No. 1437 do not apply on direct appeal to nonfinal convictions obtained before the law became effective. Such convictions may be challenged on Senate Bill 1437 grounds only through a petition filed in the sentencing court under section 1170.95"].) California appellate courts were also uniform in concluding that resentencing relief under section 1170.95 was limited to murder convictions and did not extend to persons convicted of manslaughter or attempted murder. (See, e.g., *People v. Sanchez* (2020) 48 Cal.App.5th 914, 919; *People v. Turner* (2020) 45 Cal.App.5th 428, 435-436; *People v. Flores* (2020) 44 Cal.App.5th 985, 992-997; *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887.)

During the pendency of this appeal, the Legislature enacted Senate Bill No. 775, which took effect on January 1, 2022. (Cal. Const., art. IV, § 8, subd. (c)(1) [absent urgency clause, statutory amendments enacted during regular session of the Legislature become effective on January 1 of the following year].) Among other changes, the bill

9.

amended section 1170.95 to expressly authorize individuals convicted of attempted murder and/or manslaughter to seek resentencing relief. (Stats. 2021, ch. 551, § 2; see Stats. 2021, ch. 551, § 1, subd. (a) ["[T]his legislation ... [¶ ] [c]larifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories"].) Senate Bill No. 775 also added subdivision (g) to section 1170.95, which provides: "(g) A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018)."

## B.    Relevant Legal Principles

Ventura argues the subsequent enactment of Senate Bill Nos. 1437 and 775 supplies good cause to permit him to withdraw his plea, or alternatively, for the trial court to rescind its prior approval of the plea agreement.

### 1. The Court's Discretion to Rescind its Prior Approval of a Negotiated Plea

Prior to sentencing, the trial court has " 'broad discretion to withdraw its prior approval of a negotiated plea.' " (*People v. Silva* (2016) 247 Cal.App.4th 578, 588.) Indeed, the trial court's authority to withdraw approval or otherwise reject a plea bargain under section 1192.5 is " 'near-plenary.' " (*People v. Kim* (2011) 193 Cal.App.4th 1355, 1361, quoting *People v. Stringham* (1988) 206 Cal.App.3d 184, 195.)

A trial court may exercise its discretion to withdraw approval of a plea bargain, where, for example: " '(1) it believes the agreement is "unfair" [citation]; (2) new facts have come to light; (3) the court has become more fully informed about the case; or (4) when, after further consideration, the court concludes that the agreement is " ' "not in the best interests of society." ' " ' " (*People v. Stamps* (2020) 9 Cal.5th 685, 706, quoting

10.

*People v. Mora-Duran* (2020) 45 Cal.App.5th 589, 595-596.) "[T]his list is not exhaustive." (*People v. Mora-Duran,* at p. 596.)

"In exercising their discretion to approve or reject proposed plea bargains, trial courts are charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes." (*In re Alvernaz* (1992) 2 Cal.4th 924, 941.) Thus, "a trial court's approval of a proposed plea bargain "must represent an informed decision in furtherance of the interests of society." (*Ibid*.) We review the trial court's decision for abuse of discretion, reversing only if the decision is outside the bounds of reason. (*People v. Loya* (2016) 1 Cal.App.5th 932, 946-947.)

### 2. Good Cause to Withdraw a Plea

A defendant may move to withdraw his or her plea. At any time before judgment, or within six months after an order granting probation if entry of judgment is suspended, a trial court may permit a defendant to withdraw a guilty plea for "good cause shown." (§ 1018; *People v. Grey* (1990) 225 Cal.App.3d 1336, 1340, overruled on another ground by *In re Jordan* (1992) 4 Cal.4th 116, 130, fn. 8.) "[A] plea of guilty may be withdrawn for mistake, ignorance, or inadvertence or any other factor overreaching defendant's free and clear judgment, the facts of such grounds must be established by clear and convincing evidence." (*People v. Urfer* (1979) 94 Cal.App.3d 887, 892.) Denial of a motion to withdraw a guilty or nolo contendere plea will not be reversed unless the defendant clearly demonstrates an abuse of discretion. (*Ibid.*; *People v. Grey*, *supra*, at p. 1340.)

Where a change in the law clearly and directly implicates a term of the plea agreement and negates the benefit of that agreement, at least one appellate court has found the defendant was entitled to withdraw his plea, implicitly finding good cause supported his request. In *People v. Gallego* (1979) 90 Cal.App.3d Supp. 21, the

11.

defendant entered a plea of guilty. The plea was primarily based upon the parties' understanding that the defendant would participate in an alcohol rehabilitation program to avoid the otherwise mandatory suspension of his driving privileges. The sentencing hearing was continued until the law, allowing non-suspension of the driver's license to one meeting program participation requirements, would become effective. However, before its effective date, the law was amended to include only those persons charged *after* the effective date, making the defendant ineligible. The defendant moved to withdraw his plea. His motion was denied.

On appeal from his motion, the appellate department of the superior court found that the record unequivocally established that at the time the defendant entered his plea, he, the prosecutor, and the court intended and expected that the defendant would reap the benefits of the anticipated legislation. Since the defendant was deprived a benefit that induced him to enter the bargain, and since that benefit could not be provided, the appellate court held that the defendant was entitled to withdraw his plea. (*People v. Gallego, supra*, 90 Cal.App.3d Supp. 21, 31-34.)

The Attorney General directs this court to a line of authority which he contends shows that a subsequent change in the law cannot constitute good cause to withdraw from a plea agreement. The cases he directs this court to provide limited guidance concerning the issue before this court.

In *People v. Barton* (1971) 19 Cal.App.3d 990 (*Barton*), the defendant pleaded guilty to grand theft and the unlawful taking or driving of a vehicle. The defendant subsequently moved to withdraw from his plea. (*Id.* at p. 992.) He argued, in part, that his plea was induced by knowledge of the fact that the prosecutor would use statements made by the defendant in violation of *Escobedo v. Illinois* (1964) 378 U.S. 478, a case filed after entry of his plea. (*Barton*, at p. 993.)

12.

On review, the *Barton* court held that "even if the motion to change defendant's plea had been made while the ink on *Escobedo* was not yet dry, and even if the trial court had believed that the guilty pleas were the product of the confessions, it was not compelled to grant the motion." (*Barton, supra*, 19 Cal.App.3d at p. 993.) According to the court, the "[d]efendant's problem [was] that he pleaded guilty." (*Id.* at p. 994.)

In reaching this conclusion, the *Barton* court examined three decisions by the United States Supreme Court to ascertain the effect of a subsequent change in the law upon guilty pleas: *Brady v. United States* (1970) 397 U.S. 742 (*Brady*); *McMann v. Richardson* (1970) 397 U.S. 759 (*McMann*) and *Parker v. North Carolina* (1970) 397 U.S. 790 (*Parker*). (*Barton, supra*, 19 Cal.App.3d at p. 994.)

In *Brady*, the petitioner pleaded guilty to kidnapping under a federal statute to avoid the death penalty. (*Brady, supra*, 397 U.S. at p. 743.) Following the entry of his plea, the death penalty provision in the federal statute under which he had entered his plea was declared unconstitutional. The petitioner sought habeas corpus relief, claiming that his plea had been coerced by the statute's death penalty provision. The Supreme Court rejected the petitioner's argument, stating, "(A) voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." (*Id.* at p. 757.)

The *Brady* court added, the fact that the petitioner did not anticipate the change in the law "does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." (*Brady, supra*, 397 U.S. at p. 757.)

13.

In *McMann*, the Supreme Court explained, " '[i]t is no denigration of the right to trial to hold that when the defendant waives his state court remedies and admits his guilt, he does so under the law then existing; further, he assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts. Although he might have pleaded differently had later decided cases then been the law, he is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.' " (*McMann*, *supra*, 397 U.S. at p. 774.)

Finally, in *Parker*, the defendant pleaded guilty to first degree burglary under a statute which provided for life imprisonment on guilty pleas to first degree burglary, but for a possible death penalty after trial by a jury. (*Parker*, *supra*, 397 U.S. at p. 792.) The statute was subsequently held unconstitutional. (*Id*. at pp. 794-795.) The defendant claimed his guilty plea was induced by an unconstitutional statute and that it was the product of a coerced confession. (*Id*. at p. 794.) Relying upon *Brady*, the *Parker* court held, "[A]n otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial." (*Parker*, *supra*, 397 U.S. at p. 795.)

From *Barton, Brady*, *McMann*, and *Parker*, it is clear that a voluntary plea which is intelligently made in the light of then applicable law does not become vulnerable because subsequent changes in the law indicate the plea rested on a faulty premise. (*Brady*, *supra*, 397 U.S. 742; *People v. Camenisch* (1985) 166 Cal.App.3d 594, 608-609 [subsequent changes in law do not nullify a defendant's guilty plea]; *Doe v. Harris* (2013) 57 Cal.4th 64, 70 ["the parties to a plea agreement ... are deemed to know and understand that the state ... may enact laws that will affect the consequences attending the conviction entered upon the plea"].)

In the case at bench, we have no question that Ventura's no contest plea was valid when entered. Contrary to Ventura's assertions, the subsequent enactment of Senate Bill Nos. 1437 and 775 do not present new facts not available at the time of the plea, nor does the enactment of these new laws support the conclusion that Ventura's plea was involuntary or coerced. Although Ventura might have proceeded differently if Senate Bill Nos. 1437 and 775 had been in effect at the time he entered his plea, there is no evidence that Ventura's plea was anything but voluntarily made at the time of his change of plea hearing. However, this does not end our inquiry.

To the extent Ventura contends a subsequent change in the law constitutes good cause to withdraw from a plea we presume without deciding that he is correct. (See, *People v. Nance* (1991) 1 Cal.App.4th 1453, 1461, fn. 5 [conc. opn. of Timlin, J.], citing *People v. Collins* (1978) 21 Cal.3d 208 ["it is conceivable that a situation could occur in which a change of law, rather than the state of the defendant's freedom of judgment, constituted good cause to permit the withdrawal of a guilty plea under section 1018"].)

Such a remedy has been held appropriate where a subsequent change in the law retroactively applies to a nonfinal conviction and it affects a material term of the plea agreement. (See, *People v. Stamps, supra*, 9 Cal.5th at p. 704 [finding that if the trial court were inclined to exercise its newly conferred discretion under to strike a serious felony enhancement following the enactment of Senate Bill No. 1393 (2017-2018 Reg. Sess.), the prosecution may withdraw assent to the plea or the court may withdraw its prior approval of the plea]; see also, *People v. Scarano* (2022) 74 Cal.App.5th 993, 1000 [stating that if the trial court did not withdraw assent to plea agreement, the prosecution may withdraw from plea where Assembly Bill No. 1950 (2019-2020 Reg. Sess.) retroactively reduced the defendant's term of probation to two years]*; People v. Collins, supra,* 21 Cal.3d 208 [the prosecution may withdraw from a plea agreement and reinstate dismissed charges when, before sentencing, a subsequent legislative change entirely

15.

eliminates a defendant's conviction and his or her vulnerability to incarceration, thereby depriving the People of the benefit of their bargain].) We therefore turn to Ventura's contention that the trial court abused its discretion by denying his motion.

### C. Analysis: The Trial Court's Denial of Ventura's Motion

The trial court denied Ventura's motion on three grounds. We acknowledge that " ' "a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason." ' " (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) However, we examine the trial court's statement of reasons insofar as Ventura discusses them in his opening and supplemental briefs and to the extent that some of the court's findings are relevant to our analysis of whether Ventura has demonstrated error on appeal.

#### 1. *The Trial Court's Conclusion that Ventura's Voluntary Manslaughter Conviction is Excluded from Relief Under Senate Bill No. 1437*

At the time of the evidentiary hearing on Ventura's motion, appellate courts uniformly held that Senate Bill No. 1437 did not apply to convictions for voluntary manslaughter. (See, e.g., *People v. Sanchez, supra,* 48 Cal.App.5th at pp. 917-920; *People v. Turner*, *supra*, 45 Cal.App.5th at pp. 435-436; *People v. Flores* (2020) 44 Cal.App.5th 985, 992-997; *People v. Cervantes*, *supra*, 44 Cal.App.5th at p. 887.) As the trial court observed, "[b]oth sides agree[d] that there [was] no basis for the motion under Penal Code section 1170.95 because [Ventura's] pleas here involve voluntary manslaughter and not murder."

The recent enactment of Senate Bill No. 775 has since made clear that Senate Bill No. 1437's ameliorative provisions apply to convictions for attempted murder and voluntary manslaughter. As a result, the trial court's denial of Ventura's motion on the grounds that Senate Bill No. 1437 does not apply to convictions for voluntary manslaughter is no longer valid. However, because the court did not premise its ruling solely upon the fact that Ventura's voluntary manslaughter conviction did not qualify for

16.

relief under Senate Bill No. 1437, and we review the correctness of the court's ruling rather than the reasons for the court's ruling (see *People v. Zapien, supra,* 4 Cal.4th at p. 976), we find no error. The fact that the court denied Ventura's motion, in part, because he was convicted of voluntary manslaughter is not sufficient to demonstrate the court abused its discretion.

### 2. *The Trial Court's Finding That Ventura Acted as an Aider and Abettor With the Intent to Kill or as a Major Participant With Reckless Indifference to Human Life*

Next, the trial court observed that Ventura had been held to answer for murder with a robbery-murder special circumstance allegation (§ 190.2, subd. (a)(17)(A)), and that following a section 995 motion, Ventura's challenge to the murder charge had been denied. A defendant charged with a special circumstance who is not the actual killer can only be found guilty of special circumstance felony-murder if they aided in the murder with the intent to kill (§ 190.2, subd. (c)), or, lacking intent to kill, aided in the felony "with reckless indifference to human life and as a major participant." (§ 190.2 subd. (d).)

Ventura did not challenge the special circumstance allegation following his preliminary hearing. However, according to the court, the record contained sufficient evidence showing Ventura had aided and abetted the actual killer with the intent to kill, and that Ventura was a major participant in the robbery who had acted with reckless indifference to human life. We interpret the trial court's statements to mean that if Ventura were permitted to withdraw his plea, a renewed section 995 motion challenging the murder charge and the special circumstance allegation would be unsuccessful. In light of the low evidentiary standard required to support a determination of probable cause, we agree with the court's finding.

The standard applied for probable cause is distinct from that which is required to prove guilt beyond a reasonable doubt. A magistrate or grand jury is not required to be convinced beyond a reasonable doubt that the defendant committed every element of the

17.

offense, but rather " ' " 'must be convinced only of such a state of facts as would lead a [person] of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. [Citations.] In other words, "Evidence that will justify a prosecution need not be sufficient to support a conviction." ' " ' " (*People v. Rivera* (2021) 62 Cal.App.5th 217, 237; accord, *People v. Superior Court (Bolden)* (1989) 209 Cal.App.3d 1109, 1114 [a holding order does not require findings of fact or substantial evidence which will support a conviction].)

The standard applied for probable cause is " 'exceedingly low.' " (*People v. Superior Court (Sahlolbei)* (2017) 3 Cal.5th 230, 245.) "[I]f there is some evidence supporting the information, the sufficiency thereof is not an issue." (*People v. Colvin* (1971) 19 Cal.App.3d 14, 21.) On review, the court must "draw every legitimate inference from the evidence in favor of the information. [Citation.] If there is some evidence to support the information, [the appellate court] may not inquire into its sufficiency." (*Sea Horse Ranch, Inc. v. Superior Court* (1994) 24 Cal.App.4th 446, 454.)

Here, the evidence elicited at Ventura's preliminary hearing was sufficient to establish probable cause to support his murder charge as well as the robbery-murder special circumstance allegation under amended sections 188 and 189. With respect to the lower court's conclusion that, at a minimum, Ventura acted as a major participant in the underlying robbery and acted with reckless indifference to human life, we emphasize the record need only contain *some* evidence to support the allegation.

To determine whether a defendant was a major participant in a crime, a court must examine: what role the defendant had in planning the criminal enterprise that led to one or more deaths; what role the defendant had in supplying or using lethal weapons; what awareness the defendant had of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants; and whether the defendant was present at the scene of the killing, in a position to facilitate or prevent the

18.

actual murder, or played a particular role in the death. (*People v. Banks* (2015) 61 Cal.4th 788, 803 (*Banks*).) "No one of these considerations is necessary, nor is any one of them necessarily sufficient. All may be weighed in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Ibid.*)

*People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) addressed the mens rea requirement of the special-circumstance statute. The mens rea requirement has "subjective and objective elements." (*Id.* at p. 617.) "The subjective element is the defendant's conscious disregard of risks known to him or her," while the objective element considers "what 'a law-abiding person would observe in the actor's situation.' " (*Ibid.*) *Clark* identified the following factors, many of which overlap with the *Banks* factors, as pertinent to whether a defendant acted with reckless indifference to human life: the defendant's knowledge that weapons would be used and/or his personal use of weapons; the defendant's physical presence at the scene and his opportunity to restrain the killer or aid the victim; the duration of the felony; the defendant's knowledge of his accomplice's propensity to kill; and the defendant's efforts to minimize the risk of violence in the commission of the felony. (*Clark*, at pp. 618-623.)

The record from Ventura's preliminary hearing supports the following conclusions: The robbery was not part of a preconceived plan by the group; Ventura participated in a three-on-one attack on Hernandez after Vasquez chased Hernandez, who was then unarmed, with a screwdriver; Hernandez was stabbed multiple times and his wallet was taken during the attack; Ventura did not render aid or offer assistance to Hernandez as he called out for help; immediately after the murder, Ventura and Vasquez (the actual killer) fled together to Ventura's home; and finally, Ventura hid the murder weapon and an article of clothing containing the victim's blood.

There is no indication from the facts adduced at Ventura's preliminary hearing concerning who supplied the murder weapon or exactly how long the incident took place. Further, the record lacks any affirmative indication that Hernandez knew Vasquez was likely to use lethal force—at least prior to the point when Ventura began stabbing Hernandez. While the lack of evidence supporting the *Banks/Clark* factors upon this record may be fatal if we were reviewing a jury's true finding upon the special circumstance finding for substantial evidence, it is sufficient for purposes of a probable cause determination.

No singular factor is dispositive under *Banks* (*Banks, supra*, 61 Cal.4th at p. 803), and the evidentiary showing required at a preliminary hearing is minimal. We therefore agree with the trial court's determination that there is sufficient evidence showing Ventura acted as a major participant with reckless indifference to human life.

While Ventura insists that he was not present when the killing occurred, and only saw Vasquez finishing Hernandez off, circumstantial evidence shows otherwise.[3] Three men were observed fleeing the scene of the murder as a man was heard crying out for help. From this evidence, a magistrate could reasonably conclude that Ventura, Cardona, and Vasquez fled together after Ventura and Cardona beat Hernandez while Vasquez simultaneously stabbed him. And, assuming the beating and stabbing occurred simultaneously, this progression of events supports the conclusion that Ventura acted as an aider and abettor with the intent to kill. The record therefore suggests that if Ventura would have elected to proceed to trial based upon changes made to the law from the

---

[3]    The court did not make an express credibility determination concerning Ventura's claim that he was fleeing when he initially observed Vasquez stabbing Hernandez. However, we presume the court did not find Ventura's claim credible in light of the fact that it concluded the evidence showed he acted as an aider and abettor with the intent to kill. We defer to the court's implied determination. (*People v. Tapia* (2018) 26 Cal.App.5th 942, 951, 953.)

20.

enactment of Senate Bill No. 1437, he would have done so facing a charge of first degree murder with a robbery-murder special circumstance.

### 3. The Trial Court's Determination That Ventura Received a Substantial Benefit From His Plea/Ventura's Entitlement to Relief Under Senate Bill No. 1437

Finally, the trial court concluded that Ventura had received a substantial benefit from his plea based upon the fact that he was facing the death penalty or a potential prison term of life without the possibility of parole, and he had resolved three pending felony cases against him. The court added, "I'm not convinced that defendant would have had a better outcome or that there is a likelihood of a better outcome for defendant if he would have gone to trial." In other words, the trial court concluded Ventura could still have been convicted of murder following the changes to section 188 and 189 by Senate Bill No. 1437, assuming he had proceeded to trial.

We do not doubt that Ventura benefited from entering into a negotiated plea agreement. Not only did Ventura resolve several criminal cases pending against him, he chose the certainty of a negotiated prison sentence based upon then-available evidence over the uncertainty of trial, and whatever additional evidence may have been adduced to prove his guilt beyond a reasonable doubt. To that end, the record contains statements documented in a police report which were made by a witness who spoke with Vasquez after the murder. The witness, B.V., claimed that the stabbing occurred while Ventura and Cardona were beating Hernandez. Moreover, Hernandez's autopsy report indicates that he was stabbed 33 times. If admitted at trial, this evidence, in addition to the fact that three men were observed fleeing together as Hernandez lay dying and the fact that Ventura hid the murder weapon in his home, would only have strengthened the conclusion that Ventura acted as an aider and abettor with the intent to kill.

Insofar as Ventura contends the existing record contains insufficient evidence showing he could still be convicted of murder following changes made to sections 188

21.

and 189, we acknowledge that the existing record is sparse compared to records available following a criminal trial. Nonetheless, the instant appeal is from a motion to withdraw from a plea, and the burden therefore rests with Ventura to demonstrate error. (See *People v. Alvarez* (1996) 49 Cal.App.4th 679, 694.) To the extent the trial court failed to make certain explicit factual determinations below, we are required to draw all factual inferences in favor of the judgment on appeal. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 ["[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown"].) Accordingly, based on the factual inferences we have discussed, we conclude that Ventura has failed to show error from the denial of his motion.

Ventura asserts that the stabbing was the result of a rash impulse rather than premeditation and deliberation, and that the instant case is a second degree murder case. His assertion is not supported by the record.

"A person who kills unlawfully and intentionally is guilty of first degree murder if the intent to kill is formed after premeditation and deliberation. [Citations.] If the person kills unlawfully and intentionally but the intent to kill is not formed after premeditation and deliberation, the murder is of the second degree." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653.) Hernandez was chased down, and although he was unarmed, he was beaten and stabbed multiple times during a three-on-one attack. Despite the fact that Vasquez did not express a stated intent to kill Hernandez, Ventura could reasonably infer Vasquez intended to kill Hernandez during the beating based upon the circumstances of the murder. (*People v. Bloyd* (1987) 43 Cal.3d 333, 348 ["premeditation and deliberation can occur in a very short period of time"].) And, as discussed, Vasquez's intent to kill may be inferred from circumstantial evidence of his conduct before, during, and after the stabbing. (See generally, *People v. Canizales* (2019) 7 Cal.5th 591, 602 ["[d]irect

22.

evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime"]

We conclude Ventura has failed to show the trial court abused its discretion in denying his motion to withdraw his plea following the enactment of Senate Bill No. 1437. Although Ventura seeks to withdraw from his plea, the parties acknowledge that he may still challenge his conviction for voluntary manslaughter under the section 1170.95 petition procedures. We express no view on the merits of his petition, should he choose to file one.

## DISPOSITION

The judgment is affirmed.

SMITH, J.

WE CONCUR:


PEÑA, Acting P. J.


DESANTOS, J.

23.