Filed 2/27/23  P. v. Trotter CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B319451 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A570665) |
| v. | |
| ANTHONY GRAHAM TROTTER | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Smerling, Judge.  Affirmed.

Mark Alan Hart, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant Anthony Graham Trotter appeals from the trial court's order denying his motion to withdraw a guilty plea he entered in 1988.  Court-appointed appellate counsel filed an opening brief raising no arguable issues on appeal and requested an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  After exercising our discretion to conduct a review of the merits of the appeal, we affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1986, when Trotter was 24 years old, he broke into the home of Charlene Hartsough to obtain money for drugs.  While Trotter was in the middle of the burglary, Hartsough returned home.  Trotter killed Hartsough by strangling her with a telephone cord and striking her head with a heavy candlestick.  He ransacked the home and took a video cassette recorder and some jewelry.  Trotter surrendered himself to the police before the crime was discovered.

In 1988, Trotter pleaded guilty to first degree murder (Pen. Code, § 187, subd. (a))[2], robbery (§ 211), and residential burglary (§ 459) in exchange for a sentence of life imprisonment without the possibility of parole.  As part of the plea agreement, Trotter

---

[1] Our recitation of the background is derived from our earlier nonpublished opinions in *People v. Trotter* (Oct. 29, 2003, B160437) (*Trotter I*), *People v. Trotter* (Sept. 3, 2021, B309637) (*Trotter II*), and *People v. Trotter* (Dec. 29, 2021, B310316) (*Trotter III*), of which we take judicial notice on our own motion. (Evid. Code, §§ 451, 459.)

[2] All subsequent undesignated statutory references are to the Penal Code.

2

also admitted the truth of special circumstance allegations that he committed the murder during the commission of a robbery and a burglary (§ 190.2, subd. (a)(17)), and that he personally used a dangerous and deadly weapon (§ 12022, subd. (b)). During the plea proceeding, when asked whether he had intentionally killed Hartsough, Trotter stated: "I am pleading guilty, but I didn't intend to kill her." (*Trotter I*, *supra*, B160437.) The trial court accepted Trotter's plea, found a factual basis supported the plea and the admissions, and sentenced Trotter per the plea agreement.

In 2001, the United States District Court for the Central District of California conditionally granted Trotter's petition for writ of habeas corpus on the ground that his admission to the special circumstance allegations "was not knowing and voluntary based on the lack of an adequate factual basis." (*Trotter I*, *supra*, B160437.) The district court ordered that unless Trotter was tried on, or admitted the truth of, the special circumstance allegations, his sentence should be reduced. (*Ibid.*)

The special circumstance allegations were tried before a jury in May 2002. The jury found the special circumstance allegations true, and the trial court once again sentenced Trotter to life in prison without the possibility of parole. Trotter appealed and another panel of this division affirmed the judgment. (*Trotter I*, *supra*, B160437.) Trotter petitioned for review, and the California Supreme Court denied review in 2004.

In 2020, after the enactment of Senate Bill No. 1437, Trotter petitioned for resentencing, and requested that the trial court appoint counsel to represent him and vacate his murder conviction. The trial court denied the petition ex parte based on a finding that Trotter was the actual killer of Hartsough, and thus

3

not eligible for resentencing under sections 1172.6 and 189, subdivision (e)(1). Trotter appealed the trial court's decision. Court-appointed appellate counsel filed an opening brief that raised no arguable issues on appeal and requested an independent review of the record pursuant to *Wende, supra*, 25 Cal.3d 436. After an independent review, a different panel of this division affirmed the trial court's order denying Trotter's resentencing petition. (*Trotter II, supra*, B309637.)

While Trotter's appeal from the denial of his resentencing petition was pending, he requested a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 to preserve youth-related mitigation evidence for his application to the Governor for commutation of sentence. The trial court denied the request ex parte, concluding that Trotter was not entitled to a *Franklin* hearing. Trotter appealed and another panel of this division affirmed the trial court's orders. (*Trotter III, supra*, B310316.)

In July 2022, Trotter filed a motion to withdraw the guilty plea that he entered in 1988.[3] Citing section 1016.7, subdivision (a), Trotter argued that because the prosecutor did not consider mitigating evidence of his age at the time of the offense, or the trauma that he sustained during his childhood and young adulthood, his guilty plea was not voluntary, knowing, or intelligent. Trotter also argued in his motion that his guilty plea should be set aside based on alleged ineffective assistance of trial counsel, specifically counsel's failure to bring to the prosecution's attention certain studies indicating that the brains of individuals in their early to mid-twenties are not fully developed, thus

---

[3] Although Trotter did not specify the counts as to which he sought to withdraw his plea, this opinion assumes he made the motion as to all three counts.

4

affecting their judgment. In support of his motion, Trotter attached a declaration detailing the trauma he sustained as a child, two psychological reports (dated May 1987 and February 1996) prepared at the requests of defense counsel, various news clippings to support a showing of trauma, and copies of certificates demonstrating successful completion of several different rehabilitative classes while in prison.

In February 2022, the trial court denied Trotter's motion to withdraw his guilty plea. The trial court ruled: (1) section 1016.7, enacted during the 2021 legislative session, is not retroactive and does not apply to a plea entered over 33 years ago; (2) during the same legislative session, the Legislature enacted section 1170.03, subdivision (a)(1), which provides remedies for convicted individuals "suffering the abuses claimed herein," and none of those remedies are available to Trotter; and (3) Trotter's request is otherwise untimely in that he pled guilty in 1988.

Trotter timely appealed from the trial court's order and lodged a request for a certificate of probable cause, which the trial court granted.

In October 2022, court-appointed appellate counsel filed an opening brief that raised no arguable issues on appeal and asked this court to independently review the record pursuant to *Wende*, *supra*, 25 Cal.3d 436. We notified Trotter that his appointed counsel raised no issues on appeal and gave him until November 21, 2022, to submit additional briefing or a letter raising any grounds for an appeal, or contentions, or arguments that he wished us to consider. To date, we have received no response from Trotter.

5

Exercising our discretion to conduct an independent review of the merits of the appeal, we affirm the trial court's orders.[4]

## DISCUSSION

### I. Trotter is not entitled to withdraw his plea pursuant to section 1016.7

Effective January 1, 2022, section 1016.7, subdivision (a) provides that in the "interest of justice" and "to reach a just resolution during plea negotiations," the prosecutor "shall" consider in support of a mitigated sentence whether the defendant has experienced "psychological, physical, or childhood trauma," or whether the defendant is or was a "youth at the time of the commission of the offense," and whether said trauma or youth status was a contributing factor in the commission of the alleged offense. (§ 1016.7, subd. (a)(1)–(2).) The statute defines

---

[4] While this matter was pending on appeal, the California Supreme Court issued its decision in *People v. Delgadillo* (2022) 14 Cal.5th 216, and held that the "procedures set out in *Anders* [*v. California* (1967) 386 U.S. 738] and *Wende* do not apply to an appeal from the denial of postconviction relief" under section 1172.6. (*Delgadillo*, at p. 226.) Thus, upon receiving an opening brief from counsel declaring that there are no arguable issues on appeal from an order denying relief under section 1172.6, the appellate court may dismiss the appeal after sending the defendant a copy of the brief and notice that unless a supplemental letter or brief is filed by the defendant within 30 days, the appellate court may dismiss the matter. (*Delgadillo*, at p. 232.) The appellate court, however, retains its discretion to conduct an independent review of the record. (*Ibid.*) We need not reach the issue of whether the procedures set forth in *Delgadillo* apply more generally to appeals from orders denying postconviction relief because we are exercising our discretion to independently review the merits of Trotter's appeal.

6

"youth" as any person under 26 years of age on the date the offense was committed. (§ 1016.7, subd. (b).) The statute is also silent on the issue of retroactivity.

Under *In re Estrada* (1965) 63 Cal.2d 740, 744–745, ameliorative statutes that are silent on the issue of retroactivity are presumed to apply retroactively to judgments of conviction that are not yet final. Assuming, without deciding, that section 1016.7 is an ameliorative statute that would apply retroactively under *Estrada* to judgments that are not yet final, section 1016.7 would not apply to the judgment in Trotter's case, which has long been final.

In his request for a certificate of probable cause made to the trial court, Trotter argued that section 1016.7 should apply retroactively to his case despite the finality of his judgment, otherwise "it would be a denial of equal protection." Courts, however, have consistently recognized that there is a rational basis for treating final and nonfinal judgments differently in the context of retroactivity, thus foreclosing any equal protection argument by Trotter. (See, e.g., *People v. Alexander* (2020) 45 Cal.App.5th 341, 347 [no equal protection violation in limiting retroactive application of Sen. Bill No. 1393, which gives trial courts discretion to strike prior felony enhancements, to nonfinal judgments where rational basis is to " 'assur[e] that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.' [Citation.]"]; *People v. Kennedy* (2012) 209 Cal.App.4th 385, 398 [rational basis to restrict retroactive application of ameliorative statute to nonfinal judgments is to "optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them"].)

7

Retroactivity aside, section 1016.7 provides no basis to nullify Trotter's guilty plea. When a " 'defendant … admits his guilt, he does so under the law then existing.' " (*People v. Barton* (1971) 19 Cal.App.3d 990, 995.) " '[H]e is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.' [Citation.]" (*Id.* at p. 995; see also *Brady v. United States* (1970) 397 U.S. 742, 757 ["A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action."].) Here, at the time Trotter's plea was negotiated and entered in 1988, the prosecution was not required to consider his age or evidence of trauma he sustained in support of a mitigated sentence. The fact that section 1016.7 now requires such consideration does not serve as basis to invalidate or nullify Trotter's plea.

Additionally, while Trotter faults his initial trial counsel for failing to bring to the prosecution's attention certain studies that indicate the brains of individuals in their early to mid-twenties are not fully developed, thus affecting their judgment, all the studies referenced by Trotter (i.e., the studies by Stanford University in 2009, the University of Alberta in 2011, and the National Institute of Health in 2011) postdate the plea negotiations by at least 20 years. Defense counsel could not have been expected to present studies to the prosecution that did not

8

exist at the time, and thus there was no dereliction by counsel that would serve as a basis for Trotter to withdraw his plea.[5]

In summary, the trial court did not err by concluding that Trotter was not entitled to withdraw his guilty plea under section 1016.7.

## II. The trial court correctly ruled that Trotter is ineligible for relief pursuant to section 1172.1

As an alternative basis for denying Trotter's motion to withdraw his guilty plea, the trial court cited section 1170.03 (now section 1172.1)[6], and ruled that none of the remedies available under that statute are available to Trotter.

A court may, on its own motion, recall a defendant's sentence and resentence him within 120 days of his commitment date, or at any time upon the recommendation of the Secretary of the Department of Corrections and Rehabilitation, the Board of Parole Hearings, or the district attorney of the county in which the defendant was sentenced. (§ 1172.1, subd. (a)(2).) Upon recalling and resentencing under this provision, the trial court

---

[5] For this same reason, we reject Trotter's argument that he received ineffective assistance of counsel on this point. Failing to cite to studies that do not exist at the time certainly does not fall below an objective standard of reasonableness. (See generally *People v. Dennis* (1998) 17 Cal.4th 468, 540 [ineffective assistance of counsel claim requires a showing that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms].)

[6] Effective June 30, 2022, section 1170.03 was renumbered to section 1172.1 with no change in text. (Stats. 2022, ch. 58, § 9.) For consistency and to ensure that our citations are to the most current version of this statute, we will refer only to section 1172.1 for the remainder of this opinion.

"shall apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.1, subd. (a)(2).)

Here, more than 120 days have passed since Trotter's commitment in 1988, and thus the court could not have recalled Trotter's sentence on its own motion. Additionally, there is no recommendation from either the Secretary of the Department of Corrections and Rehabilitation or the Los Angeles County District Attorney's Office to recall Trotter's sentence. And no such recommendation would come from the Board of Parole Hearings as Trotter is not eligible for parole. Thus, the trial court correctly determined that Trotter was ineligible for relief pursuant to section 1172.1.

## DISPOSITION

The trial court's order denying Anthony Graham Trotter's motion to withdraw his guilty plea is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

NGUYEN (KIM), J.*

We concur:

EDMON, P. J.

LAVIN, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.